UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
                                                :
In re SUPREMA SPECIALTIES, INC.,                :
et al.,                                         :        Chapter 7 Case (Jointly Administered)
                                                :
            Debtors.                            :             Case No. 02-10823
                                                :
-------------------------------------------------------x
                                                :
JACK G. GAGLIO and                              :
MATHILDA McBRIDE,                               :             04 Civ. 7722 (GEL)
                                                :    04 Civ. 7800 (GEL)  04 Civ. 7801 (GEL)
            Appellants,                         :    04 Civ. 7836 (GEL)  04 Civ. 7837 (GEL)
                                                :    04 Civ. 7838 (GEL)  04 Civ. 7878 (GEL)
            v.                                  :    04 Civ. 7879 (GEL)  04 Civ. 7880 (GEL)
                                                :    04 Civ. 7893 (GEL)  04 Civ. 7894 (GEL)
KENNETH P. SILVERMAN, ESQ.,                     :    04 Civ. 7895 (GEL)  04 Civ. 7923 (GEL)
Chapter 7 Trustee of Suprema Specialties,       :    04 Civ. 7924 (GEL)  04 Civ. 7925 (GEL)
Inc., et al.,                                   :
                                                :           **OPINION AND ORDER**
            Appellee.                           :
                                                :
-------------------------------------------------------x

David R. Scheidemantle, Sanjay Thapar,
Proskauer Rose LLP, New York, New York, for
appellants Jack G. Gaglio and Mathilda McBride.

Jay S. Hellman, Silverman Perlstein & Acampora
LLP, Jericho, New York, for appellee Kenneth
Silverman, Esq., Trustee of Suprema Specialties,
Inc., and related entities.


GERARD E. LYNCH, District Judge:

        Jack G. Gaglio and Mathilda McBride, appellants in these consolidated bankruptcy

appeals, challenge the entry of default judgments by the Bankruptcy Court, and that Court's

subsequent refusal to vacate those judgments.  The decision to enter default judgments will be

affirmed, but the judgments will be vacated, and the matters remanded for further proceedings

with respect to the amount of damages.

**BACKGROUND**

In February 2002, Suprema Specialties, Inc., and three related entities (collectively, "Suprema" or the "Debtors") filed for Chapter 11 bankruptcy protection, and shortly thereafter the proceedings were converted into Chapter 7 liquidation proceedings. The Bankruptcy Court appointed Kenneth Silverman, the appellee here, as Trustee for the bankrupt estates.

On or about January 21, 2004, the Trustee filed a number of complaints against Gaglio, McBride, and various entities affiliated with them, commencing adversary proceedings.[1] It is uncontested that appellants were properly served with the complaints, and that answers were due by February 20, 2004 (or, in one of the matters, February 23, 2004). Additionally, the summonses noted that the Bankruptcy Court would hold a conference on March 17, 2004.[2] Neither Gaglio nor McBride either answered or requested an extension of time to answer (either from the Trustee or the Court) by the due date. Nor did appellants (or anyone acting on their behalf) appear at the scheduled March 17 conference.

At that conference, the Trustee noted that appellants were in default, and United States Bankruptcy Judge Cornelius Blackshear directed the Trustee to serve them with a proposed

---

[1] Default judgments were eventually entered against the entities as well as against appellants. As only the appellants have appealed the judgments against them, the various corporate entities will be ignored in the further recitation of the procedural history of the case.

[2] As noted, this case involves multiple actions, and hence multiple complaints, answers, summonses, and other documents. However, insofar as is relevant to these appeals, the pertinent documents are substantially identical. In the Bankruptcy Court proceedings, Judge Blackshear and the parties dealt with the matters as a group, and the cases have been consolidated on appeal before this Court, with the presentation of a single record and set of briefs. Accordingly, and for clarity and convenience, the Court will hereinafter use the singular in referring to the various parties' filings in the Bankruptcy Court.

Order of Default and Judgment. On April 2, 2004, the Trustee served appellants with a "Notice of Settlement of Order and Default Judgment." The notice clearly stated that the default judgment would be presented to Judge Blackshear on April 28, 2004, at 10:00 a.m., although it did not specifically require appellants to appear in court at that time.

On April 27, 2004, appellants, through counsel, filed an answer to the Trustee's complaint. The Trustee received actual notice of the filing by e-mail late that day.[3] The Trustee immediately responded that the answer was late and that Judge Blackshear had directed the Trustee to settle an order of default judgment on notice against appellants. The e-mail response explicitly stated that "That order [of default judgment] will be signed tomorrow. Accordingly, your answers are hereby rejected." (A. 418.)

Appellants somewhat disingenuously insist that they were never notified that a hearing would be held on April 28 regarding the default. (Appellants' Br. 5-6; A. 387.) The notice they received, however, clearly indicated that the order would be "presented" to the judge for signature at a particular time, and counsel for the Trustee specifically reiterated in his e-mail that the order would be signed the next day. Nevertheless, appellants failed to appear before Judge Blackshear on April 28. At some time on that day they did file an objection to the settlement of the order. The Trustee asserts, and appellants do not dispute, that their opposition was not filed until some time after the conference was held. (A. 468.) Conversely, appellants point out that their objection was filed on April 28, and that the order granting the default judgment, although

_____

[3] The Trustee asserts that the answer was presented very late in the day on April 27. (A. 467.) The docket sheet does not reflect the time of filing, nor is the record clear as to when appellants filed their answer with the Court, but appellants do not dispute the timing, and the record is clear that appellants emailed the answer to the Trustee after 4:30 p.m. on April 27. (A. 295-96, 628.)

signed on April 28, was not entered on the docket until April 29, after the objection had been filed. (A. 678-79.)

Default was duly entered, and on May 10, 2004, appellants moved to vacate the default judgment. After full briefing, and oral argument on June 10, 2004, Judge Blackshear denied the motion on June 25, 2004. This appeal followed. Appellants challenge both the original entry of the default judgment and the denial of their motion to vacate the judgment.

## DISCUSSION

I.  Standard of Review

A decision to grant a default judgment is reviewed for abuse of discretion. Pecarsky v. Galaxiworld.com Ltd., 249 F.3d 167, 171 (2d Cir. 2001). Similarly, motions to vacate a default judgment "are addressed to the broad equitable discretion of the court where the default was taken," In re Chalasani, 92 F.3d 1300, 1307 (2d Cir. 1996) and therefore "the denial of a motion for relief from a default judgment is reviewed only for abuse of discretion." Am. Alliance Ins. Co. v. Eagle Ins. Co., 92 F.3d 57, 62 (2d Cir. 1996). But this seemingly tolerant standard of review is capable of different emphases, illustrated by the two just-cited cases, decided by the Second Circuit within a week of each other in 1996. In Chalasani, affirming a default judgment, the Court emphasized that "because [the trial] court is in the best position to assess the credibility and motives of the moving party, we will not disturb its decision granting or denying relief unless the decision was clearly wrong." 92 F.3d at 1307. In American Alliance, however, reversing such a judgment, the Court noted that in light of "the strong preference for resolving disputes on the merits," a reviewing court may reverse " 'even where the abuse of discretion is not glaring.' " 92 F.3d at 62, quoting Brien v. Kullman Indus., Inc., 71 F.3d 1073, 107 (2d Cir. 1995).

The Second Circuit's apparent ambivalence about the standard of review is understandable, in light of "the tension that exists between the push on a trial court to dispose of cases that, in disregard of the rules, are not processed expeditiously, which cases delay and clog its calendar, on the one hand; and the strong pull on the same trial judge to do justice in the individual case, on the other hand." Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 96 (2d Cir.1993). Ultimately, however, the Second Circuit has given clear instructions regarding where to strike the balance between these competing policies: "[B]ecause defaults are generally disfavored and are reserved for rare occasions, when doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party." Id. The Court of Appeals has also pointed out "the importance of an explanation by the district court for its denial of a motion to vacate" in permitting "intelligent appellate review," id., and therefore requires that "a trial court should provide specific reasons for a denial of a motion to set aside a default." Id. at 97.

This Court "shares the general judicial distaste for disposing of cases by defaults . . . rather than on the merits." In re Litas Int'l, Inc., No. 04 Civ. 620 (GEL), 2004 WL 1488114, at *1 (S.D.N.Y. June 30, 2004). In order to avoid precisely the sort of ambiguity about a party's non-appearance that occurred here, this Court's individual practices require a party seeking a default judgment to proceed by order to show cause, which identifies a particular time and place for the defaulting party to appear and take advantage of one last chance to contest the case. Individual Practice Rules, Attachment A (Default Judgment Procedure). At that hearing, the Court assures itself that the defaulting party has not appeared, filed papers, or contacted the party seeking the default before entering judgment. Absent clear prejudice to the party seeking the

default, judgment is not entered if there is any reason to believe that the defaulting party intends to appear and defend the case on the merits.

This practice is by no means mandatory, and represents merely an exercise by this Court of its discretion to manage its docket. The Court is respectful not only of the different preferences of other courts in the exercise of their discretion, but also and especially of the particular case-load pressures in the Bankruptcy Court, where, as the proceedings in this very case illustrate, each of the many bankruptcy cases may involve multiple adversary actions among numerous parties. Accordingly, the Court reviews the decisions below on an abuse of discretion standard, with sensitivity to the perceptions of the judge on the scene, but also with a recognition that defaults are disfavored.

## II.    Appellants' Arguments

Appellants' attack the default judgment below from two angles. First, they assert a number of essentially technical procedural arguments that the entry of a default judgment was improper as a matter of law. Second, they frontally attack the decision of the bankruptcy court to refuse to vacate the judgment as an abuse of discretion.

### A.    Procedural Claims

Without any apparent sense of irony, appellants seek to relieve themselves of the consequences of their disregard for the letter of procedural rules by insisting on the punctilio of exact compliance with what they contend are the rules governing defaults, claiming that "overwhelming legal authority mandat[es]" vacation of the default judgments. (Appellants' Br. 8.) As might be expected from parties whose regard for the rules applicable to them is limited, their reading of the "legal authority" they cite is somewhat selective.

First, appellants argue that on a literal reading of Fed. R. Civ. P. 55(a), a default may only be entered against a party that "has failed to plead or otherwise defend" itself, and that the default judgment here was therefore straightforwardly in error, since they answered the complaint on April 27, and the default was not entered until April 29 (Appellants' Br. 10-11).

The citations to legal authority on which this argument rests are misleading at best. Appellants truncate the language of the rule on which they rely. Rule 55(a) in fact provides for a default whenever a party "has failed to plead or otherwise defend *as provided by these rules*." (Emphasis added.) Filing an untimely answer does not constitute pleading "as provided by these rules," which set time limits for responding to a complaint. See Fed. R. Civ. P. 12(a)(1)(A). The case law on which appellants rely is similarly misstated. Relying on <u>Direct Mail Specialists, Inc. v. Eclat Computerized Tech., Inc.</u>, 840 F.2d 685, 689 (9th Cir. 1988), appellants contend that "[c]ourts have interpreted [Rule 55(a)] to mean that no default can be entered if the defendant has filed a response indicating its intent to defend the action." (Appellants' Br. 10.) But <u>Direct Mail</u> says no such thing. In that case, which in fact *affirmed* a refusal to vacate a default, the Ninth Circuit distinguishes a default judgment entered by the Clerk of Court pursuant to Rule 55(b)(1) from such a judgment entered by the Court under Rule 55(b)(2). Explicitly limiting its analysis to the former rule, the court notes that where a party has appeared, "a default entered by the clerk is void *ab initio*." 840 F.2d at 689. By its own express terms, the case is inapplicable here, where the default judgment was entered by the Court, not the Clerk.

Appellants go on to cite two other cases for the proposition that "[e]ven late-filed responsive pleadings prevent entry of default." (Appellants' Br. 10.) But <u>Mitchell v. Brown & Williamson Tobacco Corp</u>, 294 F.3d 1309, 1316-17 (11th Cir. 2002), does not hold that a

belatedly filed answer prevents entry of a default. Rather, the court there simply affirmed a district court's refusal to enter a default judgment, reciting the general preference against defaults and noting among other factors that counsel for defendant had entered a notice of appearance before the plaintiff even moved for default, and had filed a slightly belated motion to dismiss. Nothing in the case supports appellants' reading of it as holding that entry of a default judgment against a party that has already filed a belated pleading is an error of law. Similarly, <u>Dr. Ing. H.C.F. Porsche AG v. Zim</u>, 481 F. Supp. 1247, 1248 n.1 (N.D. Tex. 1979), does not remotely hold that a "late-filed responsive pleading[ ] prevent[s] entry of default." (Appellants' Br. 10.) The district court there merely discretionarily denied a request for entry of a default judgment, in a short footnote, noting that defendants had eventually filed an answer shortly after plaintiff's motion. No authority supports appellants' argument that defendants can prevent entry of a default judgment simply by filing an answer, no matter how untimely, so long as it hits the courthouse before the judge signs a default judgment.

Second, and even more hyper-technically, appellants argue that the procedure followed by the Bankruptcy Court on April 28, 2004, violated Local Bankruptcy Rule 9074-1(c), claiming that the "Notice of Settlement" procedure is improper to achieve a default (as opposed to entry of a default judgment), and that the judge improperly held an ex parte hearing on the settlement order without notice to them. (Appellants' Br. 10.) The argument is more remarkable for its chutzpah and creative reworking of the record than for its merit.

To start with, appellants ignore the inconvenient fact that they were in default, and that the default had been found by the Court, long before April 28. At the March 17, 2004, conference, the Bankruptcy Court was advised that appellants were in default, having failed to

respond to the complaint (as they should have done weeks before) and having failed to appear at the conference (which, under Local Bankruptcy Rule 9020-1, itself permits entry of a default). (A. 600-01.)  By advising the Trustee to settle a notice for a default judgment, Judge Blackshear in effect noted that the appellants were in default.  This finding was indisputably correct as of that date.  There is thus no possible argument that the Notice of Settlement procedure, which is specifically authorized for entry of a default judgment, see Local Bankruptcy Rule 9074-1(c)(1), was improper.  The Court had effectively noted the default on the record at the March 17 conference, and instructed the Trustee to proceed to the next step by seeking a default judgment by means of the Notice of Settlement.

Appellants argue that the Federal Rules of Civil Procedure forbid such a process, by requiring that the clerk of the court enter a notation of default on the docket of the case and issue a certificate of default before the court itself may issue a default judgment.  Apart from the argument, rejected above, that appellants were not in default due to the belated answer, there is no dispute that appellants were *in fact* in default; the present argument is merely that the technicality of the clerk's *recording* of the default had not been complied with.  There is, indeed, authority for the proposition that under the federal rules, "[e]ntry of a default is a prerequisite to entry of a default judgment."  Sys. Indus., Inc. v. Han, 105 F.R.D. 72, 74 (E.D. Pa. 1985) (emphasis omitted).  As a judge of this Court has explained:

> The Federal Rules of Civil Procedure contemplate two steps in the entry of a default judgment.  First, the court clerk is expected to enter default pursuant to Rule 55(a).  Entry of default is accomplished "by the placement of a notation of the party's default on the clerk's record of the case."  Dow Chemical Pacific Ltd. v. Rascator Maritime S.A., 782 F.2d 329, 335 (2d Cir. 1986). Second, either the clerk or the court enters the default *judgment*

pursuant to Rule 55(b).

Hirsch v. Innovation Int'l, Inc., No. 91 Civ. 4130 (MJL), 1992 WL 316143, at *1 (S.D.N.Y. Oct. 19, 1992) (emphasis in original).  But after describing the normal procedure contemplated by the Federal Rules, the Court in Hirsch goes on to *reject* the very proposition appellants want this Court to adopt, that "[r]igid adherence to these rules" is mandatory.  Id.  Rather, the Court concludes that in the interests of the "efficient administration of justice,"

> courts have excused the failure to obtain entry of default prior to an application for default judgment, and have instead included an order for entry of default with a decision on the merits of the application for default judgment.

Id.  The Court then went on to do precisely that, and considered the merits of the motion for entry of a default judgment notwithstanding the movant's failure to secure a certificate of default.  Id. at *2.  And Hirsch does not stand alone.  In American Alliance, the Second Circuit "note[d]" that the entry of a default judgment in that case was "procedurally flawed" by failure to comply with Rule 55(a), but then proceeded to ignore that "flaw[ ]," and to review the District Court's denial of the motion to vacate the default judgment under the "excusable neglect" standard of Rule 60(b).  92 F.3d at 59.

Accordingly, the Bankruptcy Court's grant of a default judgment without requiring prior entry of a default by the clerk was not erroneous as a matter of law.

Third, appellants argue that Judge Blackshear erred by holding an "ex parte" hearing on the "Notice of Settlement" on April 28, 2004, because Local Bankruptcy Rule 9074-1(c)(2) provides that a hearing ordinarily will not be held on a "Notice of Settlement," and will only be scheduled on notice to all parties.  (Appellants' Br. 11.)  But appellants' claim that there was a

10

"complete lack of notice" to them of the April 28 hearing (id. 12), at which counsel for the Trustee appeared and addressed the Court, rings hollow.

There is no question that appellants received ample notice of the complaint, which they failed to answer in a timely manner; of the March 17 conference, at which they failed to appear; and of the "Notice of Settlement," which advised them that the Trustee sought entry of a default judgment that was to be signed on April 28. Yet, notwithstanding this history, and by then represented by counsel, appellants took no steps to contact the Bankruptcy Court and seek to be heard before the default judgment was signed. Instead, appellants evidently relied on the belated filing of the answer, in the apparent hope that (a) this filing would be communicated to the judge before the judgment was signed, and (b) even if it was signed, the judge would agree with their erroneous position that even a belated filing would preclude the entry of the default judgment. The appellants and their lawyers were on notice that a default judgment was being presented for signature on April 28, 2004, and they knew that counsel for the Trustee had by e-mail "rejected" their late-filed answer and insisted that the "order [granting a default judgment] will be signed tomorrow." (A. 418.) A reasonable lawyer would need no further "notice" to know that she or he had best be in Judge Blackshear's courtroom the following day to oppose the entry of judgment.

In any event, while counsel for appellants was given ample notice that a judgment was to be entered the following day, and thus had an opportunity to appear and be heard if appellants so desired, it is not the case that the Court held an unauthorized "hearing" on that date. There was a regularly scheduled conference on the Debtors' case on that day, on which counsel for the Trustee and for numerous other parties with matters pending in the Suprema bankruptcy were

present, and a number of issues were addressed. One after another, the Court proceeded through the status of the various adversary proceedings pending in the case. Quite naturally, when the agenda reached the appellants' matters, counsel for the Trustee presented the default judgment order for signature, and advised the judge, who had no reason to know that appellants were represented or had in any way appeared in the case, that counsel for appellants had attempted to serve and file answers late the previous day. (A. 628-29.)

It is difficult to understand what appellants find objectionable about this. As they note, the Notice of Settlement procedure does not provide for a hearing. (Appellants' Br. 11.) Thus, the Court could have simply signed the order in chambers on April 28, without further consultation with the parties. Unsurprisingly, the Court instead took up the order at the scheduled conference. Appellants argue that it was improper for counsel to make "ex parte" arguments to the Court at the conference. But counsel did no such thing. Rather, he advised the Court of the events that had transpired since the last conference, and stated that the Trustee still took the position that appellants were in default. (A. 628-29.) Of course, counsel was ethically obligated to do just that; appellants would be more justly aggrieved if counsel for the Trustee had simply stood silent while the judge signed the order, in accordance with the "no hearing" rule appellants now contend was violated, without advising the Court of appellants' belated attempt to answer the complaint.

Arguably, counsel for the Trustee could be faulted for not advising appellants' counsel that a conference on the matter was scheduled. But the Trustee could reasonably have believed that appellants were on notice. The Notice of Settlement specifically stated that the default judgment order would be signed at 10:00 a.m. on April 28 – the specification of the precise time

should have indicated to a reasonable lawyer that the Bankruptcy Judge had scheduled a court proceeding, rather than simply a due date for reply. And any reasonable lawyer coming into a new matter on behalf of a client who was long in default, and who faced a notice proposing that a default judgment be signed early the next morning, would promptly contact the court in order to find out when the next conference or appearance in the case was scheduled, and advise the presiding judge that an extension of time within which to file an answer *nunc pro tunc* would be promptly sought. In any event, regardless of whether any lawyer might have performed more effectively, Judge Blackshear cannot fairly be accused of depriving appellants of an opportunity to be heard or conducting an ex parte proceeding.

Since the entry of the default judgment was not legally erroneous, the Court turns to appellants' claim that the grant of a default judgment was an abuse of discretion.

B.      Abuse of Discretion

As stated above, this Court grants default judgments only when a defendant, having been given every opportunity to defend, appears to have no intention of answering or appearing in the lawsuit. Moreover, in an effort to assure that as many actions as possible are resolved on the merits, this Court rarely if ever awards a default judgment if a defendant appears, albeit belatedly, at a hearing on the default and represents that it intends to contest the action. This Court likely would have balanced the factors differently, and arrived at a different result, had the case been presented here rather than before Judge Blackshear. But this Court does not sit in this case as a court of first instance, exercising discretion, but rather as an appellate court, reviewing the Bankruptcy Court's decision for abuse of discretion.

1.     The Rulings Below

This Court's review of the rulings below is made more difficult by the fact that the Bankruptcy Court did not state its reasons in an oral or written opinion.  See Enron, 10 F.3d at 97 ("a trial court should provide specific reasons for a denial of a motion to set aside a default").  Instead, the Bankruptcy Court's decisions appear in oral comments at three relatively brief proceedings.  First, on March 17, 2004, at a pretrial conference covering 17 different adversary proceedings in the Suprema bankruptcy, the Court, without even addressing the appellants' matters by name, merely responded to the Trustee's request for a default "with respect to other[ defendants who] have not answered," by instructing the Trustee to "settle a [m]otion for default on those parties who have not answered," and set a return date for the next conference in the matter, then scheduled for April 21, 2004, at 10:00 a.m.  (A. 600-01.)  The Court thus recognized that the appellants were in default for having failed to answer, but did not enter judgment, instructing the Trustee to seek such a judgment by motion.

The second proceeding, on April 28, 2004, was nearly as abbreviated.  Once again, the Court dealt with issues in a large number of proceedings growing out of the Suprema bankruptcy.  Over the 30 pages of transcript, the Court dealt with a variety of matters in several different actions.  Less than two pages of that transcript concern appellants' matters, and a fair amount of that is taken up with simply identifying the cases by name and docket number.  The Trustee informed the Court that on the previous day he had received a purported answer to the complaint from appellants, and had advised appellants that he "rejected" the answer because there had been no "opposition to [the motion for default judgment], no application to the Court, no explanation for the Court . . . [n]o excuse for the delay."  (A. 628-29.)  The Trustee stated that he "still

request[s] that [the] Court sign the Order granting the default," to which the Court responded only, "[v]ery well." (A. 629.) The Court then signed the Order granting the default judgment.

Finally, on June 10, 2004, the Court heard argument on appellants' motion to vacate the default judgment. Again, nearly half of the 40-page transcript is consumed by other matters in the same bankruptcy. When appellants' motion was called, the Court asked counsel to address two cases, Pioneer Inv. Servs. Co. v. Brunswisk Assocs. L.P., 507 U.S. 380 (1993), in which the Supreme Court addressed the nature of "excusable neglect" in the context of late filing of claims in bankruptcy cases, and Silivanch v. Celebrity Cruises, Inc., 333 F.3d 355 (2d Cir. 2003), in which the Second Circuit addressed the same topic in the context of a district court's extension of time to appeal. (A. 653.)

Unfamiliar with these cases (which, in fairness to counsel, do not directly deal with setting aside default judgments), counsel perhaps unwisely addressed not the equities of appellants' situation, but the series of hypertechnical alleged errors in the Bankruptcy Court's default proceedings already considered and rejected by this Court. When the Court questioned the appellants' assertion of "good faith," noting that they were "over forty days late in submitting the [a]nswer," and asked how the appellants could explain that as "excusable neglect" (A. 654), counsel did not answer the inquiry, but returned to his unavailing attack on the Trustee's failure to obtain a clerk's certificate of default. (A. 655) After the increasingly exasperated judge rejected a number of these arguments, the Court finally instructed counsel to "[m]ake a simple argument as to good faith." (A. 664.)

Addressing the reasons for delaying an answer, counsel argued that appellants were "unable to retain counsel[ ] of choice, because of . . . severe financial hardship and . . . the need

to devote funds to a pending criminal matter," which "hampered [their] ability to dedicate funds to this matter." (A. 665-66.) When the Court questioned where the funds had finally come from to retain counsel, the response was that "recent developments in the criminal matter led [appellant] to believe that his criminal defense would not be as costly as it was anticipated earlier, and so he could devote those funds [to this matter]." (A. 666.) Counsel then argued that there was no prejudice to the Trustee, relying heavily on the fact that the Trustee had waited two years after his appointment to file the complaint, in comparison with which the 55-day delay occasioned by appellants' lateness in answering was insignificant. (A. 668.) The Trustee responded that the estate was prejudiced by any delay, since appellants had asserted their Fifth Amendment privilege in an earlier deposition in response to questions about their assets and any money received from the Debtors, thus permitting an inference that they were "dissipating, secreting and transferring assets." (A. 671-72.) Although counsel for the appellants argued that the deposition had been in another proceeding, the Court concluded that it had "heard enough," and denied the motion. (A. 674.)

From these proceedings, it is clear that the Bankruptcy Court denied appellants' motion to vacate, and adhered to the decision to grant a default judgment, because appellants had not established good faith reasons for their default, and because of a concern that further delay would prejudice the Trustee by permitting appellants to hide or dissipate assets that could be used to satisfy the judgment.

## 2. The Rulings Reviewed

There can be little quarrel with the Bankruptcy Court's entry of a default judgment on April 28. Appellants had been in default for nearly two months after failing to move of answer

with respect to the Trustee's complaint.  Although the Trustee informed the Court that an untimely answer had been filed quite literally at the eleventh hour, which might have warranted the Court in postponing entry of the judgment, the fact remains that appellants had been served with notice that the order entering a default judgment would be presented to Judge Blackshear at the Bankruptcy Court at 10:00 a.m. on April 28, 2004, and appellants had not appeared at that conference, sought an extension of time to respond to the motion, or otherwise contacted chambers.  Short of accepting appellants' erroneous argument that the mere filing of an answer, however belatedly, prevents as a matter of law entry of a default no matter what the circumstances, the Bankruptcy Court was well within its discretion to reject the belated answer and enter a default judgment.

The more substantial question presented is whether that Court abused its discretion in denying appellants' eventual motion to vacate the default judgment.  Fed. R. Civ. P. 55(c) directs that a default judgment may be set aside "in accordance with Rule 60(b)."  The portion of that rule primarily at issue here permits a judgment to be set aside for "excusable neglect."  Fed. R. Civ. P. 60(b)(1).  As the Supreme Court has noted, "excusable neglect" is a somewhat " 'elastic concept.' "  Pioneer, 507 U.S. at 392, quoting 4A C. Wright & A. Miller, Federal Practice and Procedure § 1165, p. 479 (2d ed. 1987).  With all due respect to the Bankruptcy Court, this Court does not find the Pioneer and Silivanch cases directly apposite to this case.  Neither of those cases arose under Rule 60(b), and as the Supreme Court pointed out in Pioneer itself, the phrase does not have identical meanings in all contexts.  507 U.S. at 394-95 (comparing usage in Rule 60(b) and in Bankruptcy Rule 9006(b)).  See also Am. Alliance, 92 F.3d at 61 n.2 (comparing usage in Rule 60(b) and Fed. R. App. P. 4(a)(5)).  More directly applicable are cases specifically

addressing the context of setting aside a default judgment, such as the Second Circuit's decisions in Pecarsky and American Alliance.

In Pecarsky, the Second Circuit noted the factors relevant to such a decision:

> When deciding whether to relieve a party from default or default judgment, we consider the willfulness of the default, the existence of a meritorious defense, and the level of prejudice that the non-defaulting party may suffer should relief be granted.

249 F.3d at 171. The same standards are set forth in American Alliance, 92 F.3d at 59. See also Commercial Bank of Kuwait v. Rafidain Bank, 15 F.3d 238, 243 (2d Cir. 1994); Davis v. Musler, 713 F.2d 907, 915 (2d Cir. 1983).

With respect to the first criterion, the Second Circuit has adhered to a strict standard of willfulness, and "none [of its cases have] denied motions to vacate because of mere administrative or clerical error." Am. Alliance, 92 F.3d at 60. While cautioning that "[g]ross negligence can weigh against the party seeking relief from a default judgment," the Court noted that such negligence "does not necessarily preclude relief," whereas "[t]he subjective inquiry into willfulness effectively distinguishes those defaults that, though due to neglect, are excusable, from those that are not." Id. at 61. In American Alliance, the Court vacated a default judgment where a defendant's "failure to answer the complaint was due to a filing mistake by its in-house counsel's clerk." Id. Similarly, in Pecarsky, the Court found a *corporation's* default, caused by its failure to obtain counsel in a timely manner after its original counsel withdrew, not to be willful, where "appellants were in constant contact with the district court," and "made repeated efforts to inform the court of their difficulties in finding new counsel." 249 F.3d at 172.

Here, in contrast, the Bankruptcy Court correctly viewed appellants' default as a willful decision. Although appellants argue that their failure to appear was due to "financial conditions, which rendered them unable to dedicate funds to the defense" of this action (Appellants' Reply Br. 6), the record does not support any finding of such purported inability. The affidavits cited in support of this assertion in appellants' brief provide no details as to appellants' financial condition, let alone any financial statement, and merely recite the formulaic conclusion that "financial hardship *severely hampered my ability to dedicate funds* to the defense of this matter." (A. 297, 338; emphasis added.) The reasons for this carefully limited formulation become clear in the argument before the Bankruptcy Court. When counsel for appellants attempted to cite financial obstacles to retaining "counsel[ ] of choice" as a reason for default (A. 665), the resulting discussion made clear that these obstacles were largely a matter of strategic choice. After Judge Blackshear noted that appellants were now represented by an expensive law firm, and asked where the money had come from, counsel acknowledged that the money had been there all along, but that appellants had made a conscious decision not to allocate funds to defend the civil action. (A. 666-67.) While, as Judge Blackshear noted, such a choice may be "understandable" (A. 667), it is nevertheless a strategic choice. Moreover, unlike the corporate defendant whose default was at issue in Pecarsky, appellants are individuals,[4] and could have appeared *pro se* at any time to answer the complaint, or to seek an extension of time, or merely, as in Pecarsky, to keep in touch with the Court on their own behalf and on behalf of their

---

[4] Default judgments were entered against the two individual appellants and several corporations. The corporations, however, have not appealed. In Pecarsky, although an individual defendant was named in the complaint, the default judgment was entered solely against the corporate defendant, and the Court's opinion concerned only that defendant. 249 F.3d at 170.

corporations while any difficulties in retaining counsel were worked out.

Appellants thus made a strategic decision to ignore the instant case in deference to other matters, and then, when those other matters came to appear less pressing, reversed that decision, retained counsel, and sought to defend this case. (A. 666-67.) Such gamesmanship is not "negligence," or even "gross negligence." It is willful action. <u>American Alliance</u> strongly suggests that such willful default is by definition not excusable neglect, and precludes relief under Rule 60(b). At a minimum, the absence of excusable reasons for appellants' default weighs heavily against appellants.

The second criterion is more easily met. "To satisfy the criterion of a 'meritorious defense,' the defense need not be ultimately persuasive at this stage. 'A defense is meritorious if it is good at law so as to give the factfinder some determination to make.' " <u>Am. Alliance</u>, 92 F.3d at 61, quoting <u>Anilina Fabrique de Colorants v. Aakash Chems. and Dyestuffs, Inc.</u>, 856 F.2d 873, 879 (7th Cir. 1988). Appellants do not make a powerful showing that there defenses have merit. They argue very briefly (and unpersuasively) that the complaints fail to state a claim (Appellants' Br. 15-16), although they did not attempt to move to dismiss the complaint on that ground, and unhelpfully note that the causes of action against them are "relatively few" while their answers "raised twelve affirmative defenses" (<u>id</u>. 17-18), as if the merits of a case could be assessed by the number of issues raised by each party. In fact, there is little in the record that would permit the Court to assess the potential merit of any of appellants' purported defenses. Nevertheless, in light of the "clear preference . . . for cases to be adjudicated on the merits," <u>Pecarsky</u>, 249 F.3d at 174, and the fact that the Bankruptcy Court did not address this issue or suggest that meritorious defenses were lacking, this Court will assume that meritorious defenses

have been presented, and count this factor in favor of appellants.

In addition to noting the willfulness of appellants' default, the Bankruptcy Court also relied on the third factor, prejudice to the party seeking the default. To establish prejudice, a plaintiff must demonstrate that delay will result in the loss of evidence, create increased difficulties of discovery, or provide opportunities for fraud and collusion. Davis, 713 F.2d at 916. The Trustee here relies on the latter type of prejudice, as he must: there is no basis for finding that the delay that would have been occasioned had the default judgment been vacated would greatly impede his ability to litigate the case.[5]

The Trustee points out, however, that the Bankruptcy Court was entitled to draw an adverse inference against appellants due to their having asserted their Fifth Amendment privilege at a deposition in connection with the Suprema bankruptcy in January 2003. Appellants asserted the privilege with respect to their relationships with over 50 business entities allegedly involved in the fraud that bankrupted Suprema (AA. 19-66, 116-47), including whether they were involved in efforts to defraud Suprema's creditors (id. 46, 140). The Trustee correctly points out that in

---

[5] Mere delay in adjudicating the case does not alone constitute prejudice. Davis, 713 F.2d at 916. The Trustee cites no reason to believe that adjudication would have been rendered more difficult by the additional two months' delay achieved by the original delay. It must be noted, however, that defaulting parties greatly exacerbate "the law's delay" – a frustration that even without such misconduct counted for Hamlet as one of the prime vexations of life. By deliberately defaulting, appellants achieved at least a two-month delay in the case, effectively granting themselves an extension of time to file an answer. By failing to appear at the April 28 conference to contest entry of the default, they secured another six weeks before their motion to vacate could be heard. This appeal has consumed additional resources of the parties and additional time. In effect, appellants' disregard of the procedural rules has succeeded in derailing this litigation for a considerable period, no doubt inflicting some difficult-to-quantify prejudice on the party with the burden of proof. The Court does not rely on any such prejudice, however, and merely notes that if the default judgment were reversed, appellants' strategic default would be rewarded.

this civil matter the Bankruptcy Court was permitted to draw an adverse inference against appellants from their refusal to answer such questions. Baxter v. Palmigiano, 425 U.S. 308, 317-19 (1976); United States v. Certain Real Prop., 55 F.3d 78, 82-83 (2d Cir. 1995).

Appellants' response to this claim of prejudice is thoroughly unpersuasive. They do not dispute that they "declined to answer certain questions" (Appellants' Reply Br. 8), by which they appear to mean every question that was put to them. They conclusorily assert (in passing, in a subordinate clause, without further analysis) that "none of the questions asked by the Trustee remotely suggests that Appellants are doing anything improper with assets." (Id.) But this assertion ignores the fact that appellants refused to answer questions directly asking whether they had engaged in a fraud on Suprema, and refused to answer any questions whatever that bore on the nature and location of any of their assets. Under these circumstances, the Trustee and the Bankruptcy Court had a legitimate concern for the ability of the Trustee to collect any judgment, and for the possibility that appellants were engaged in a deliberate strategy of bad faith delay.[6] These circumstances sharply distinguish cases like Am. Alliance, 92 F.3d at 61-62, and Pecarsky, 249 F.3d at 174, in which the plaintiffs did not even argue that they suffered any such prejudice.

This Court fully acknowledges the preference for adjudication on the merits, and might well have indulged that preference had it been in the shoes of the Bankruptcy Court. But this Court is not in the same position as the Bankruptcy Judge, who had presided over the underlying

---

[6] Appellants' argument that the Trustee's delay of nearly a year in bringing adversary proceedings against them bespeaks the Trustee's purported lack of "concerns that the Appellants were doing anything improper" (Appellants' Reply Br. 8) barely warrants response. That the Trustee might better have acted more expeditiously (or that the Trustee was delayed in acquiring the evidence necessary to bring the action by, among other things, appellants' refusal to answer questions) has no bearing on whether additional delay would prejudice the Trustee.

bankruptcy for several years, and was thus "the person most familiar with the circumstances of the case and . . . in the best position to evaluate the good faith and credibility of the parties," Davis, 713 F.2d at 912 (internal citation and quotation marks omitted).  In view of the facts indicating that appellants' default was a deliberate strategic choice, and suggesting that the Trustee might well be prejudiced by further delay, the refusal of the Bankruptcy Judge to vacate the default cannot be deemed an abuse of discretion.

III.    Damages

Although the decision to grant a default and the refusal to vacate the default were proper exercises of the Bankruptcy Court's discretion, that Court appears to have erred in one respect, which will require further proceedings.  As appellants point out, to obtain a default judgment, a plaintiff must present admissible evidentiary proof of his alleged damages, unless the claimed amount is liquidated or susceptible to mathematical calculation.  See, e.g., SEC v. Mgmt. Dynamics, 515 F.2d 801, 814 (2d Cir. 1975).  This does not mean that a formal inquest or evidentiary hearing is required in order to calculate damages.  Fed. R. Civ. P. 55(b)(2) permits a court to conduct such hearings "as it deems necessary and proper" to calculate damages, vesting considerable discretion in the court to establish the procedures appropriate to the particular case. A hearing is not necessary "as long as [the court] ensure[s] that there [is] a basis for the damages specified in a default judgment."  Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989).

Both parties cite Fustok and Action S.A. v. Marc Rich & Co., Inc., 951 F.2d 504, 508 (2d Cir. 1991), as providing the appropriate standard for decision.  As the Trustee correctly points out, these cases emphasize the flexibility granted to a trial court in deciding how to go about

"ensur[ing] that there [is] a basis for the damages specified." Fustok, 873 F.2d at 40. And both cases also note that a judge may rely on his or her "personal knowledge of the record," id.; see also Action S.A., 951 F.2d at 508, in assessing the basis for a damage award. However, to the extent that those cases provide a benchmark for an appropriate inquiry into damages, they are quite distinguishable from the present matter.

In Action S.A., before entering the default judgment, "Judge Griesa conducted a year-long inquest on damages involving volumes of affidavits and lengthy oral argument from the parties." 951 F.2d at 508. His familiarity with the case was gained through proceedings whose "long and tortuous history," id., had spanned eight years. In Fustok, "the District Court relied upon detailed affidavits and documentary evidence, supplemented by the District Judge's personal knowledge of the record, gained during four years of involvement with the litigation, including his role as presiding judge at [a] trial," at which the value of the claims involved had been "fully aired." 873 F.2d at 40.

Here, in contrast, there has been no trial, and the Bankruptcy Court was not, as in Action S.A., "inundated with affidavits, evidence, and oral presentations by opposing counsel." 951 F.2d at 508. So far as the record before this Court shows, the Trustee made no evidentiary submission whatsoever in connection with the application for a default judgment, but simply submitted a request for the amount of damages specified in the complaint, which was then adopted by the Bankruptcy Court. The oral argument on the motion to vacate included at most one sentence that addressed the amount of damages,[7] and at no point did either the Trustee or the

_____

[7] Appellants' counsel at one point argued that "There's nothing in the pleadings that the Plaintiff filed, in seeking the default o[r] the default judgment, based upon which the Plaintiff is entitled to the $175 million award that they cited in the Complaints." The Court immediately

Court state the basis on which the damage award was calculated or referred to any evidentiary support for the amount of the award.

On this appeal, the Trustee attempts to supply that gap by arguing in a long footnote (Trustee Br. 10-11 n. 6) that the Bankruptcy Court was aware, as a result of proceedings during the Suprema bankruptcy, of facts derived from various criminal prosecutions and civil actions. That recitation may well be accurate. Unfortunately, virtually nothing in that footnote (which contains no citations to the record) is documented anywhere in the record on appeal, and the Bankruptcy Court did not refer to any of it either in any written order or opinion, or on the record in the various conferences at which it noted the default, signed the default judgment, or denied the motion to vacate.

In <u>Fustok</u> and <u>Action S.A.</u>, the Court of Appeals affirmed awards that were based on specific findings entered by the district courts on the basis of a record that was before the appellate court. The Court of Appeals' references in each of those cases to the familiarity of the judge below with the proceedings were based on proceedings that were documented in the record before it, and that had been specifically relied upon by the trial judge in making his findings. This Court would be fully prepared to defer to the trial judge's expertise derived from the proceedings in the case, if the judge had expressly invoked that expertise in making findings, and if the record documented the sources from which the judge could have drawn his conclusions. As the record stands, this Court can only speculate as to the basis of the ruling, or accept the undocumented representations of the Trustee. In the absence of any submission in the record documenting damages, or any basis in the record on which the Court could conclude that the

_____

ruled that "[t]hat portion of your [m]otion is denied as well." (A. 661.)

Bankruptcy Court drew on specific facts that were otherwise before it in calculating the damage award, this Court has no basis to evaluate the Bankruptcy Court's exercise of discretion.

Accordingly, the judgment must be vacated and the case returned to the Bankruptcy Court for any further proceedings necessary to justify the damages sought by the Trustee. It lies entirely within the sound discretion of the Bankruptcy Court whether any proceedings at all are necessary. If the Trustee is correct that the record already before the Bankruptcy Court contains adequate information on which to base the damage calculation, it need only refer to that information and explain the basis for the calculation. If, on the other hand, the Bankruptcy Court desires further submissions from the Trustee documenting the evidentiary basis for the award, or wishes to hold a hearing, or to engage in any other factfinding procedure authorized by law, it may in its sound discretion conduct such proceedings.

## CONCLUSION

For the reasons stated above, the order of the Bankruptcy Court granting judgment by default is affirmed, but the judgment is vacated and the matter is remanded to the Bankruptcy Court for further proceedings consistent with this opinion to calculate the award of damages.


SO ORDERED.

Dated: New York, New York
      June 6, 2005

                                    GERARD E. LYNCH
                                  United States District Judge